MODIFIED OPINION[1]

NOT DESIGNATED FOR PUBLICATION

No. 122,303

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

NATHAN D. CRUM,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Original opinion filed October 15, 2021. Modified opinion filed November 24, 2021. Affirmed.

*Jennifer C. Bates*, of Kansas Appellate Defender Office, for appellant.

*Kimberly A. Rodebaugh*, senior assistant district attorney, *Thomas Stanton*, district attorney and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., BUSER, J., and WALKER, S.J.

BUSER, J.:  This is Nathan D. Crum's direct appeal of his jury conviction for aggravated sodomy. Crum's sole contention on appeal is that the district court erred in

---

[1]**REPORTER'S NOTE**:  Opinion No. 122,303 was modified by the Court of Appeals on November 22, 2021, in response to the Appellant's Motion for Rehearing and Modification filed October 25, 2021.

denying his pretrial motion to suppress incriminating statements he made during an interview with police officers. Finding no error, we affirm the conviction.

FACTUAL AND PROCEDURAL BACKGROUND

In June 2018, Crum and D.D. met through an online dating website while D.D. was separated from her husband. Crum and D.D. subsequently met at a friend's house in Wichita and "fooled around" but did not engage in consensual sex until July 3, 2018. However, the following day, D.D. reconciled with her husband and the couple began living together again. D.D. and Crum remained friendly and occasionally communicated with each other but did not see each other again until August 17, 2018.

On August 17, 2018, D.D. went to Crum's house around 2 p.m. to pass the time until she had to pick up her children from school at 3:10 p.m. D.D. and Crum sat and watched television until about 2:45 p.m., when D.D. stood up and told Crum she needed to leave. Crum then stood up and hugged D.D. He also tried to kiss her, but D.D. resisted and told him no. According to D.D., Crum then "spun [her] around, pushed [her] down to the couch and put one arm over [her] as he had tore down [her] pants and proceeded to have sex with [her]."

D.D. physically resisted but was unsuccessful. According to D.D., Crum penetrated her vagina and rectum with his penis. D.D. testified that Crum did not stop until after he ejaculated in her rectum. She testified that Crum did not have her consent to have sexual relations, and she told him to stop several times. After the incident, D.D. left Crum's house and picked up her children from school.

D.D. received a text message from Crum on her way to the school. In the message, Crum apologized and said he would understand if D.D. stopped talking to him. D.D. responded, telling Crum that he basically raped her because she repeatedly told him no

2

and that she was in pain. Crum replied and apologized again. When D.D. returned home, she discovered that she was bleeding from the sexual assault. She called 911.

As part of the police investigation, D.D. submitted to a sexual assault examination at the hospital. During the examination, vaginal and rectal swabs were collected. A detective interviewed D.D. in the emergency room regarding the sexual assault.

Later that evening, an officer contacted Crum at his residence and transported him to the law enforcement center where Detective Matthew Franklin interviewed him. After Detective Franklin advised Crum of his *Miranda* rights, Crum agreed to speak with him. The two men spoke for about 20 minutes before Crum invoked his *Miranda* rights and asked to speak with an attorney. See *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). The interview was stopped, and Crum was arrested and transported to the Reno County Correctional Facility.

On August 20, 2018, Crum made his first appearance in court. At that time, the district magistrate judge declined to appoint counsel for Crum until the State filed a criminal complaint against him. The judge found probable cause to hold Crum and ordered the State to file criminal charges by August 27, 2018. A surety bond was set in the amount of $200,000.

On August 22, 2018, two days after Crum had his first appearance, he told a jailer that he wanted to speak to the detective handling the case. Prior to talking with Crum, Detective Diana Skomal checked and learned that Crum had not been appointed an attorney. Detective Skomal and Detective Franklin went to the jail and spoke with Crum. The detectives discussed Crum's prior request for counsel and asked whether he still wanted an attorney present during the interview. Crum told Detective Skomal, "That's what I'm trying to clarify. . . . Right now, I just need to find a way to get out because I want to see my son grow up." Crum advised that an attorney had not yet been appointed

3

to represent him but he was going to ask the court for an appointed counsel. Crum asked the detectives if they knew when an attorney would be appointed, and they told Crum that they assumed it would be the following Monday, 10 days after he was arrested.

The detectives advised Crum of his *Miranda* rights again, and Crum signed the waiver form indicating that he understood the rights he was waiving by speaking with the detectives. Both detectives stated that Crum did not exhibit signs of being under the influence of alcohol or drugs during the videotaped interview. During the interview, Crum told the detectives that, despite D.D. telling him no when he started to penetrate her rectum with his penis, he completed the act anyway.

The next day, on August 23, 2018, Crum was charged with one count of rape in violation of K.S.A. 2018 Supp. 21-5503(a)(1)(A) and one count of aggravated criminal sodomy in violation of K.S.A. 2018 Supp. 21-5504(b)(3)(A). On August 27, 2018, the district court appointed counsel to represent Crum.

Almost a year later, in June 2019, Crum filed a motion to suppress the incriminating statements he made during the August 22, 2018 interview. The basis for the motion was stated in two sentences: "The Defendant Nathan D. Crum was unable to understand, and waive, his right under *Miranda* due to his being under the influence of drugs. This should have been readily apparent to the interrogator."

Later that month, the district court held a hearing on the motion to suppress. Detective Franklin testified that although Crum spoke with a lisp or slur due to an apparent speech impediment, he did not believe that Crum was under the influence of alcohol or drugs during the first interview on August 17, 2018. Regarding the second interview, Detective Franklin testified that Crum had asked to speak with a detective on August 22, 2018, despite invoking his rights five days earlier. Detective Franklin testified that at the outset of the second interview, he discussed Crum's prior invocation of rights

4

with him and went over the *Miranda* rights again before Crum signed the waiver form. The detective testified that Crum had been in jail since August 17, 2018, and he did not notice any indications that he was under the influence of alcohol or drugs. A videotaped recording of the August 22, 2018 interview was played for the district court, and we have independently reviewed the videotaped interview included in the record on appeal.

Reno County Sheriff's Deputy Brad Buckbee testified regarding booking Crum into the jail on August 17, 2018. According to the deputy, at that time Crum denied having taken any alcohol or drugs and he gave no indication of being under the influence. Reno County Deputy Dustin VanScyoc, who transported Crum to and from the law enforcement center on August 17, 2018, also testified that Crum was not under the influence of alcohol or drugs on that occasion. Detective Skomal corroborated Detective Franklin's testimony regarding advising Crum of his *Miranda* rights on August 22, 2018. She also testified that, in her estimation, Crum was not under the influence of alcohol or drugs during the second interview.

The district court told the parties it needed to further consider the evidence before it issued a final ruling on the motion. The district court commented that it had not heard any evidence that Crum was under the influence of drugs or alcohol during the interviews. However, the district court was concerned about Crum's intellect and the district magistrate judge's delay in appointing an attorney for him pending the filing of charges while he was in jail.

As discussed later in this opinion, on June 25, 2019, the district court issued a written order making findings of fact and conclusions of law and denying Crum's motion to suppress the incriminating statements he made during the August 22, 2018 interview.

In August 2018, the district court held a jury trial on Crum's charges. During trial, D.D. testified about her relationship with Crum and the sexual assault she reported to the

5

police on August 17, 2018. Traci Schmidt, a sexual assault nurse examiner (SANE) at the Hutchinson Regional Medical Center, testified that she performed the sexual assault examination of D.D. Schmidt said that D.D. had several wounds, both externally and internally, to her vaginal and rectal areas. These clinical findings were confirmed by another nurse, Shana Eaves.

Dawn Ford, a forensic scientist at the Kansas Bureau of Investigation (KBI), testified about her opinions regarding the evidence obtained from the sexual assault examination. Ford stated that the vaginal swabs from D.D. tested negative for seminal fluid, but the rectal swabs tested positive for seminal fluid. Ford opined that the DNA found on the rectal swabs were a mixture of DNA from Crum and D.D.'s husband.

Detective Franklin and Detective Skomal testified regarding the August 22, 2018 interview with Crum, including Crum's inculpatory admission to rectally penetrating D.D. despite her protestations. The video recording of the interview was admitted in evidence and viewed by the jury despite Crum's contemporaneous objection. The defense did not present any evidence.

After deliberations, the jury found Crum not guilty of rape but guilty of aggravated criminal sodomy. Crum filed a motion for new trial, a motion for judgment of acquittal, and a motion for a dispositional departure sentence. The district court denied the motions. Crum was sentenced to 195 months' imprisonment.

Crum timely appeals.

DENIAL OF MOTION TO SUPPRESS INCRIMINATING STATEMENTS

On appeal, Crum contends the district court committed reversible error when it denied his motion to suppress the incriminating statements he made on August 22, 2018.

6

Crum preserved this issue for appellate review by contemporaneously objecting to the admission of the evidence during trial. See *State v. Dupree*, 304 Kan. 43, 62, 371 P.3d 862 (2016).

The standard of review for a district court's decision on a motion to suppress has two components. First, the appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. In reviewing factual findings, the appellate court does not reweigh the evidence or assess the credibility of witnesses. *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015). Of note, in this appeal Crum does not take issue with any factual findings made by the district court.

Crum does appeal the district court's legal conclusion—the second component of the standard of review—that the coercive effect of Crum's incarceration without appointment of counsel did not overcome his will and that the resulting incriminating interview was a free and voluntary act. We will review the district court's ultimate legal conclusion using a de novo standard.

"The rules regarding custodial interrogations and an accused's constitutional rights are well established. The Fifth Amendment to the United States Constitution guarantees the right against self-incrimination, including the right to have a lawyer present during custodial interrogation and the right to remain silent." *State v. Walker*, 276 Kan. 939, 944, 80 P.3d 1132 (2003) (citing *Miranda*, 384 U.S. at 479).

At the hearing on the motion to suppress, Detective Franklin testified that Crum initially agreed to speak with him during the first interview on August 17, 2018. During the interview, Detective Franklin advised Crum of his *Miranda* rights, and the two spoke for about 20 minutes before Crum invoked his right to counsel. In its order denying the motion to suppress, the district court found that this interview was terminated after Crum

7

requested legal counsel. On appeal, Crum does not assert that his constitutional rights were violated on August 17, 2018.

Once a suspect has invoked *Miranda* rights, a law enforcement officer may not ask further questions unless the suspect "'(a) initiated further discussions with the police and (b) knowingly and intelligently waived the previously asserted right.'" *State v. Aguirre*, 301 Kan. 950, 961, 349 P.3d 1245 (2015) (quoting *State v. Matson*, 260 Kan. 366, 374, 921 P.2d 790 [1996]); see also *State v. Salary* 301 Kan. 586, 604, 343 P.3d 1165 (2015) (similarly holding that "if the accused has unambiguously invoked the right to counsel, questioning must cease immediately and may be resumed only after a lawyer has been made available or the accused reinitiates the conversation with the interrogator").

"The prosecution has the burden to show that subsequent events indicated a waiver of a previously asserted right and that the waiver was knowing, voluntary, and intelligent under the totality of the circumstances." *Walker*, 276 Kan. at 947 (citing *Oregon v. Bradshaw*, 462 U.S. 1039, 1044-46, 103 S. Ct. 2830, 77 L. Ed. 2d 405 [1983]; *Matson*, 260 Kan. at 374).

As the State points out, the testimony from Detective Franklin and Detective Skomal, paired with the district court's findings, show that Crum reinitiated contact with the detectives on August 22, 2018, before they interviewed him the second time. Importantly, Crum does not challenge the district court's factual findings. Instead, he challenges the legal conclusion based on these findings by arguing that "[e]ven if Mr. Crum waived his right to counsel by reinitiating contact with detectives, his confession was involuntary because the police used coercive tactics."

The State counters:

"Although the defendant makes this argument, [Crum] provides no evidence that tactics used by law enforcement were coercive. Additionally, there was no issue presented by [Crum] at the suppression hearing regarding 'coercive tactics' of law enforcement. When [Crum] filed his Motion to Suppress his statements, his sole argument was his inability to understand, and waive, his rights under *Miranda* due to his being under the influence of drugs."

At the outset, the State is correct that since filing his motion to suppress, Crum has abandoned on appeal any claim that he was under the influence of alcohol or drugs during the second interview. This is because he has not argued this aspect of the suppression issue in his appellate brief. It is well settled that an issue not briefed is deemed waived or abandoned. *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018).

We also agree with the State that in his motion to suppress and at the hearing on the motion, Crum did not argue that being held in jail for an extended period without charges being filed or counsel appointed was coercive. This is important because generally, issues not raised before the district court may not be raised on appeal. See *State v. Kelly*, 298 Kan 965, 971, 318 P.3d 987 (2014). Our review of the record, however, convinces us that the issue of coercion was raised sua sponte by the district court at the suppression hearing. While the district court did not attribute any coercion to the law enforcement officers for the district magistrate judge's delay in appointing counsel for Crum, we will review this issue because regardless of its origin, coercion may play a role in vitiating a free and voluntary confession. That is the question presented on appeal.

As stated in the district court's conclusions of law contained in its written order denying suppression:

"Bottom line, the Court feels the Defendant being held in jail for an extended period without charges being filed forthwith or counsel being appointed was coercive in

9

nature. When the Court considers the totality of the circumstances, the Court finds the coercion, although not approved, did not overcome the Defendant's will and the confession was a free and voluntary act. The Defendant requested to speak with the officers and voluntarily signed the *Miranda* waiver form.

"The officers were fair in their interrogation and not involved in the coercion the Court feels existed at the time of the case. The Court finds the Defendant knew what he was signing when he signed [the] *Miranda* waiver form and agreed to speak to the officers. The coercion previously discussed was not sufficient to overcome the Defendant's will and the statement was a free and voluntary act. Under the law of the State of Kansas presently existing, the Court finds the State has met its burden and the Motion to Suppress is denied. It is so ordered."

In arriving at its conclusions of law, the district court considered several factors stated by our Supreme Court in *State v. Randolph,* 297 Kan. 320, 326, 301 P.3d 300 (2013). The list of nonexclusive factors a district court must consider when looking at the totality of the circumstances to determine whether a defendant's statements are voluntary are:

"'(1) the accused's mental condition; (2) the manner and duration of the interrogation; (3) the ability of the accused to communicate on request with the outside world; (4) the accused's age, intellect, and background; (5) the fairness of the officers in conducting the interrogation; and (6) the accused's fluency with the English language.' [Citations omitted.]" *Randolph*, 297 Kan. at 326.

Crum does not challenge the district court's findings regarding these six factors, several of which favor a finding that the incriminating statements were voluntarily made. Instead, he argues that his five-day incarceration without any charges filed or an attorney appointed prior to the August 22, 2018 interview was unduly coercive and outweighed the other factors considered by the district court.

10

Preliminarily, we note that Crum has not favored us with any legal precedent in support of his legal contention that, under the circumstances of this case, he was coerced into making incriminating statements. Moreover, the district court had the benefit of reviewing the entire August 22, 2018 videotaped interview, which we have also reviewed and considered.

In reviewing the district court's legal conclusion that Crum's incriminating statements made in the August 22, 2018 interview was voluntarily given, we will individually consider the six factors set forth in *Randolph*.

*The Accused's Mental Condition*

At the conclusion of the suppression hearing, the district court commented that it had not heard any evidence that Crum was under the influence of drugs or alcohol during the two interviews. On the other hand, as detailed in the Factual and Procedural Background section of this opinion, several law enforcement officers who had personal contact with Crum on August 17 and 22, 2018, testified that, in their opinion, he was not under the influence of alcohol or drugs on those occasions.

*The Manner and Duration of the Interrogation*

Having viewed the videotaped interview of August 22, 2018, the district court found that the manner and duration of the interview were not excessive or oppressive. We agree. The interview was brief with few questions asked and Crum essentially narrated his account of the incident.

*The Ability of the Accused to Communicate on Request with the Outside World*

The district court did not directly address this factor, however, the district court's strongly stated views regarding the district magistrate judge's delay in appointing an

11

attorney for Crum while he was in jail, unable to make bond, and being held without charges arguably relate to this category.

The record shows that Crum was arrested on August 17, 2018, after his first interview. The magistrate judge held a first appearance on August 20, 2018. At that hearing, the judge found probable cause to hold Crum and ordered the State to file criminal charges by August 27, 2018. The judge declined to appoint an attorney for Crum until charges were filed. A surety bond was set in the amount of $200,000. On August 23, 2018, one day after the second interview, charges were filed. An attorney was appointed to represent Crum on August 27, 2018.

At the motion to suppress hearing, the district judge sua sponte criticized at length the magistrate judge's failure to appoint an attorney for Crum on August 20, 2018, at his first appearance or shortly thereafter: "Bottom line, the Court feels [Crum] being held in jail for an extended period without charges being filed forthwith or counsel being appointed was coercive in nature."

Crum argues that "keeping a person behind bars and waiting for up to ten days to charge him with a crime, all the while denying him the appointment of counsel, is deployed with one mission—to obtain confessions." However, Crum fails to cite any authority to support the conclusion that the procedures followed in this case were unduly coercive under Kansas law. Moreover, as a factual matter, the State did not wait 10 days to charge Crum. It charged him on August 23, which was six days after his arrest.

It is apparent that the district court felt the delay in charging Crum and appointing an attorney to represent him was coercive and mitigated against a finding that the resulting incriminating statements were voluntarily provided. Nevertheless, the district court concluded that the officers were "not involved in the coercion the Court feels existed at the time of the case." Moreover, the district court concluded that "[t]he

12

coercion previously discussed was not sufficient to overcome [Crum's] will and [his] statement was a free and voluntary act."

*The Accused's Age, Intellect, and Background*

The district court thoroughly addressed this factor during the suppression hearing and in its written order. In its written order, the district court stated:

"The Court has limited information about [Crum's] intellect. He indicates in the interview he has a hard time reading. As indicated from the bench, the Court finds [Crum] to be easily manipulated based upon prior contacts with [Crum] in open [c]ourt. He does not appear to have difficulty comprehending his circumstances and the English language."

The district court concluded: "The Court finds [Crum] knew what he was signing when he signed [the] *Miranda* waiver form and agreed to speak to the officers." In short, while raising some concerns about Crum's intelligence, the district court ultimately concluded that he had sufficient knowledge to understand his constitutional rights and waive them.

*The Fairness of the Officers in Conducting the Interrogation*

The district court concluded that the "officers were fair in their interrogation." The best evidence of whether the officers fairly conducted the August 22, 2018 interview is found in the videotaped recording which the district court reviewed and was included in the record on appeal for our consideration. The district court's conclusion has some support in the record. Detective Franklin initially interviewed Crum on August 17, 2018, but promptly stopped after Crum requested counsel. On August 22, 2018, after Crum requested to speak with a detective, Detective Franklin and Detective Skomal learned that Crum did not have counsel and asked him whether he wished to waive the *Miranda* rights he previously invoked. Crum agreed to waive those rights, signed another *Miranda* rights

13

waiver, and spoke with the detectives. As noted earlier, upon our review of the August 22, 2018 videotaped interview, we find no error in the district court's finding that the officers were fair during the interview.

*The Accused's Fluency with the English Language*

The district court found that Crum "was fluent in the English language." Additionally, Crum did "not appear to have difficulty comprehending his circumstances and the English language." This finding was supported by the testimony of several law enforcement officers who personally interacted with Crum and, while noting that he had a speech impediment, reported no problems understanding him.

After individually considering the six *Randolph* factors, the district court employed the *Randolph* analytical approach towards evaluating the totality of the factors. As our Supreme Court has instructed, the district court should analyze the totality of the circumstances because the situation surrounding the confession "'may dissipate the import of an individual factor that might otherwise have a coercive effect.'" *Randolph*, 297 Kan. at 326 (quoting *State v. Sharp*, 289 Kan. 72, 81, 210 P.3d 590 [2009]). The district court must then analyze the effect of any existing dilution to determine whether a single factor or a combination of factors, considered under the totality of the circumstances, leads to the conclusion that a suspect's will was overborne, making the confession not a free and voluntary act. *Randolph*, 297 Kan. at 326; see also *State v. Gilliland*, 294 Kan. 519, 529, 276 P.3d 165 (2012) (holding the same).

Based on our review, the district court carefully applied the six *Randolph* factors to the facts of this case. The district court recognized that, in its opinion, coercion existed based on the amount of time Crum was in jail without being charged and without having an appointed attorney. Nonetheless, considering the other factors and the totality of the circumstances, the district court concluded that Crum's confession was a free and

14

voluntary act. Accordingly, the district court found that the State met its burden of proof and denied the motion to suppress.

Upon this record, we hold the district court's factual findings were supported by substantial competent evidence and its legal conclusions were not erroneous. We hold that the district court's judgment denying the motion to suppress was not error.

Affirmed.